UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAYLA GIFFORD,  )<br>  )<br>       **Plaintiff,**  )<br>  )<br>v.  )<br>  )<br>COMMONWEALTH OF  )<br>MASSACHUSETTS, et al.,  )<br>  )<br>       **Defendants.**  )<br>  ) | Civil Action No.<br>24-12243-FDS |

### MEMORANDUM AND ORDER ON
### DEFENDANTS' MOTIONS FOR PARTIAL DISMISSAL

**SAYLOR, C.J.**

      This is a civil action brought by plaintiff Kayla Gifford against seven defendants: the Commonwealth of Massachusetts; the Massachusetts State Police ("MSP"); the Massachusetts Executive Office of Public Safety and Security ("EOPSS"); the City of Taunton; two MSP officers, Colonel Jack Mawn and Trooper Ali Jaafar; and Officer Sarah Ulianelli of the Taunton Police Department. The complaint alleges that Trooper Jaafar and Officer Ulianelli conducted an illegal search and seizure of plaintiff on October 18, 2022, resulting in multiple tort and constitutional violations.

      The complaint asserts a total of seven claims. The first, asserted against all defendants, is a claim of negligence arising out of "the manner in which [plaintiff] was pursued, seized, apprehended, restrained, strip[-]searched, arrested, and prosecuted" (Count 1). (Compl. ¶ 49). It further asserts that the Commonwealth, MSP, EOPSS, and Colonel Mawn negligently trained and supervised Trooper Jaafar (Count 2) and that the City of Taunton negligently trained and supervised Officer Ulianelli (Count 3). It asserts claims of negligent infliction of emotional

distress (Count 4) and intentional infliction of emotional distress ("IIED") (Count 5) against the Commonwealth, MSP, EOPSS, Colonel Mawn, and the City of Taunton.  Finally, the complaint asserts two claims under 42 U.S.C. § 1983 alleging that all seven defendants violated plaintiff's Fourth and Eighth Amendment rights in the course of conducting an illegal search and seizure (Counts 6 and 7).[1]  The complaint seeks monetary damages for the alleged violations.

Defendants have filed three motions seeking partial dismissal of the complaint.  One motion was filed by Trooper Jaafar alone and seeks dismissal under Fed. R. Civ. P. 12(b)(6) as to his liability under Count 1.  (ECF No. 16).[2]  A second motion was filed by the City of Taunton and Officer Ulianelli seeking dismissal under Fed. R. Civ. P. 12(b)(6) as to the City's liability under Counts 1, 3, 4, and 5, and as to Officer Ulianelli's liability under Count 1.  (ECF No. 12).[3]  A third motion filed by the Commonwealth, MSP, EOPSS, and Colonel Mawn seeks dismissal of all claims against them under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (ECF No. 27).

For the following reasons, the motions will be granted.

I. **Background**

Unless otherwise noted, the following facts are set forth as alleged in the complaint.[4]

A. **Parties**

Kayla Gifford is an individual who resides in Fall River, Massachusetts.  (Compl. ¶ 2).

---

[1] Count 6 alleges a § 1983 claim against the Commonwealth, MSP, EOPSS, Colonel Mawn, and Trooper Jaafar.  Count 7 alleges a § 1983 claim against the City of Taunton and Officer Ulianelli.

[2] Trooper Jaafar has not moved to dismiss Count 6.

[3] The City of Taunton and Officer Ulianelli have not moved to dismiss Count 7.

[4] On a motion to dismiss, the court may properly consider four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

The Commonwealth of Massachusetts is a governmental entity. (*Id.* ¶ 3). The MSP and EOPSS are agencies of the Commonwealth. (*Id.*). The City of Taunton is a duly organized city under the laws of the Commonwealth. (*Id.* ¶ 5). Colonel Jack Mawn and Trooper Ali Jaafar are officers employed by the MSP at various times. (*Id.* ¶¶ 4, 6). Officer Ulianelli is an officer employed by the Taunton Police Department. (*Id.* ¶ 7).[5]

### B.      Factual Background

On October 18, 2022, while working a patrol shift in Taunton, Massachusetts, Trooper Ali Jaafar observed a white male operating a car whose inspection sticker had expired. (*Id.* ¶¶ 8-9). He did not pull the car over at that time. (*Id.* ¶ 9).

Shortly thereafter, Trooper Jaafar saw the same car at a gas station. (*Id.* ¶ 10). The car had two additional occupants, Kayla Gifford and Marcus Davis, both of whom are black. (*Id.* ¶¶ 10, 12). Trooper Jaafar monitored the vehicle and pulled it over after it made an abrupt turn with a late signal. (*Id.* ¶ 11). He then ordered the driver, Manual Medeiros, to step out of the car for questioning. (*Id.* ¶¶ 12-13a).[6] According to the complaint, as Medeiros walked away from the car, he dropped an object that looked like "a rock of crack cocaine." (*Id.* ¶ 13b). Trooper Jaafar then pat-frisked Medeiros and questioned him about plaintiff and Davis. (*Id.*). He handcuffed Medeiros and placed him in his police cruiser. (*Id.* ¶ 14).

Trooper Jaafar then ordered Davis out of the car and searched him, finding "cash"—that is, cocaine—in his pocket. (*Id.* ¶ 16). He handcuffed Davis and placed him in the cruiser. (*Id.*).

---

[5] The complaint mentions Terrence Reidy—the Director of the EOPSS—in the opening paragraph, but he is neither a listed party nor a named defendant and there are no allegations pleaded against him individually. (Compl. ¶ 1). Defendants do not appear to recognize Reidy as a co-defendant and plaintiff does not indicate that he should be considered a defendant separate from the EOPSS. Thus, the EOPSS, but not Reidy as an individual, will be construed as the named defendant.

[6] The complaint contains two sequential paragraphs that are both designated as ¶ 13. The Court will refer to the first such paragraph as ¶ 13a and the second as ¶ 13b.

Officer Sarah Ulianelli then arrived on the scene. At Trooper Jaafar's request, she conducted a "roadside strip-search" of Gifford. (*Id.* ¶ 17). According to the complaint, the search involved the manipulation of Gifford's outer and inner clothing, and was "done out in the public view," exposing her private areas to the officers and others. (*Id.* ¶ 19). Officer Ulianelli placed her under arrest after finding drugs in her possession. (*Id.* ¶ 20).

Gifford was later prosecuted in the Taunton District Court. (*Id.* ¶ 21). On November 3, 2023, the court conducted a suppression hearing. (*Id.* ¶ 22). The court concluded that Trooper Jaafar lacked probable cause necessary to justify the search and seizure of Gifford and Davis, rendering the arrests unconstitutional. (*Id.* ¶ 23). The court accordingly granted the motion to suppress the drug evidence, and the charges against Gifford were dismissed on December 18, 2023. (*Id.* ¶ 24). The Commonwealth did not appeal the court's findings or the dismissal of the case. (*Id.*).[7]

### C.    **Procedural Background**

Gifford filed this suit on August 30, 2024. The complaint alleges that all defendants acted negligently and breached a duty of care owed to plaintiff in the course of the search, seizure, and arrest (Count 1); that the Commonwealth, MSP, EOPSS and Colonel Mawn negligently trained and supervised Trooper Jaafar (Count 2) and that the City of Taunton negligently trained and supervised Officer Ulianelli (Count 3); that the Commonwealth, MSP, EOPSS, Colonel Mawn, and the City of Taunton negligently and intentionally inflicted

---

[7] The complaint further alleges three separate incidents of alleged racial discrimination by Trooper Jaafar, none of which involved plaintiff. In the first incident, Trooper Jaafar allegedly stopped a vehicle driven by a Hispanic male without probable cause. (Compl. ¶ 26). During an ensuing lawsuit, a defense expert allegedly testified that Trooper Jaafar stopped Hispanic drivers more than often than "would be expected." (*Id.* ¶ 29). That matter was dismissed for unspecified reasons. The second incident involved Trooper Jaafar allegedly pulling over a car driven by a black male. (*Id.* ¶ 31). An ensuing prosecution of the driver was dismissed after a motion to suppress was granted. (*Id.* ¶ 32). The third incident involved Trooper Jaafar allegedly stopping a vehicle occupied by four black males and charging all occupants with drug crimes. (*Id.* ¶ 34). The district court found that the stop was unlawful and dismissed the case, although the prosecution has appealed that decision. (*Id.*).

emotional distress on plaintiff (Counts 4 and 5); and that all defendants violated plaintiff's Fourth and Eighth Amendment rights in the course of conducting an illegal search and seizure (Counts 6 and 7). The complaint seeks monetary damages for the alleged violations.

Defendants have moved for a partial dismissal of the complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6). Specifically, defendants contend that (1) sovereign immunity bars the state-law claims asserted against the Commonwealth, MSP, EOPSS, and Colonel Mawn in his official capacity; (2) the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, shields Colonel Mawn, Trooper Jaafar, and Officer Ulianelli in their personal capacities from liability under a theory of negligence; (3) plaintiff failed to satisfy her statutory requirement of presentment to bring the negligence-based claims against the City of Taunton under the MTCA; (4) the MTCA shields the City of Taunton from liability for claims arising out of intentional torts, including IIED; (5) the complaint fails to state an IIED claim as to Colonel Mawn; (6) the Commonwealth, MSP, EOPSS, and Colonel Mawn (in his official capacity) are not "persons" subject to suit under 42 U.S.C. § 1983; and (7) the complaint fails to state a claim under 42 U.S.C. § 1983 against Colonel Mawn in his individual capacity.

For the following reasons, the motions will be granted.

## II.    Legal Standard

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)). If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted. *Id.* When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v.*

*United States*, 620 F.3d 50, 54 (1st Cir. 2010).

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**III.    Analysis**

    **A.    Sovereign Immunity**

Defendants have moved to dismiss the state-law claims asserted in Counts 1, 2, 4, and 5 as to the Commonwealth, MSP, EOPSS, and Colonel Mawn in his official capacity, on the ground that in the absence of consent or abrogation, the Commonwealth and its agencies are immune from suit under the Eleventh Amendment. *See* U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (stating that "[i]t is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"); *Wojcik v. Massachusetts State*

6

*Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002) (stating that a state's immunity from suit "extends to any entity that is an arm of the state" (internal quotations omitted)). That immunity extends to suits brought against state officials in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (stating that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").

Here, the Commonwealth has not waived its sovereign immunity or otherwise consented to suit in federal court for the asserted tort claims. *See Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003) (stating that "[b]y enacting the Massachusetts Tort Claims Act, the Commonwealth has *not* waived its Eleventh Amendment immunity to suit in federal court" (emphasis added)). Thus, the motion to dismiss Counts 1, 2, 4, and 5 as to the Commonwealth, MSP, EOPSS, and Colonel Mawn in his official capacity will be granted for lack of subject-matter jurisdiction.[8]

### B.     The § 1983 Claim against the Commonwealth and Its Agents

Defendants have also moved to dismiss Count 6 as to the Commonwealth, MSP, EOPSS, and Colonel Mawn in his official capacity, asserting that they are not "persons" subject to suit under § 1983. Section 1983 claims are limited to conduct attributable to a "person" acting under the color of state law. *See Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997). States, state agencies, and state employees acting in their official capacities are not "persons" for the purposes of a § 1983 suit. *Will*, 491 U.S. at 71 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *see Destek Grp., Inc. v. State of New Hampshire Pub. Utilities Comm'n*, 318 F.3d 32, 40 (1st Cir. 2003) (stating that "[i]t is well

---

[8] The complaint is ambiguous as to whether Trooper Jaafar and Officer Ulianelli are sued in their official capacities in Count 1. To the extent that they are sued in their official capacities, for the reasons stated, the Court lacks subject-matter jurisdiction over such claims and they will be dismissed.

settled . . . that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action").

Accordingly, and because plaintiff does not contest defendant's assertion that § 1983 is inapplicable to states and their agents, Count 6 will be dismissed as to the Commonwealth, MSP, EOPSS, and Colonel Mawn in his official capacity.

### C. Individual Liability

#### 1. The Negligence Claims

Defendants next move to dismiss Counts 1, 2, and 4 as to Colonel Mawn and Count 1 as to Trooper Jaafar and Officer Ulianelli in their individual capacities on the ground that they are not subject to liability under the MTCA.

The MTCA "shields public employees from personal liability for negligent conduct" performed in the scope of their employment. *Caisse*, 346 F.3d at 218 (citing *McNamara v. Honeyman*, 406 Mass. 43, 46 (1989) (holding that public employees are immune from negligence suits under the MTCA)); *see also* Mass. Gen. Laws ch. 258, § 2. Instead, the "exclusive" remedy available to a plaintiff alleging injury resulting from a public employee's negligence is a suit against the public employer itself. *See* Mass. Gen. Laws ch. 258, § 2.

As to Colonel Mawn, Counts 1, 2, and 4 allege various forms of negligence in his role as an MSP official—that is, based on acts performed within the scope of his employment. The complaint does not allege that Colonel Mawn was acting beyond the scope of his employment at the time of the alleged incident, and plaintiff concedes that the MTCA bars negligence suits against public employees under such circumstances. Colonel Mawn therefore falls squarely within the immunity protections afforded by the MTCA to public employees. Accordingly, Counts 1, 2, and 4 will be dismissed as to him.

However, plaintiff contends that Trooper Jaafar and Officer Ulianelli were acting beyond the scope of their employment at the time of the alleged incident, and that therefore the MTCA does not shield them from liability under a theory of negligence. The three factors to be considered when determining whether an employee's conduct is within the scope of his employment are "(1) whether the conduct in question is of the kind the employee is hired to perform, (2) whether it occurs within authorized time and space limits, and (3) whether it is motivated, at least in part, by a purpose to serve the employer." *Merlonghi*, 620 F.3d at 55 (quoting *Clickner v. City of Lowell*, 422 Mass. 539, 542 (1996)) (internal quotations omitted). "[S]cope of employment is not construed restrictively" and can include intentional conduct that "stems from and directly relates to" the employee's responsibilities. *See Gindi v. Norton*, 216 F. Supp. 3d 199, 204-05 (D. Mass. 2016) (internal quotations omitted).

Here, the alleged incident involves a motor-vehicle stop initiated by Trooper Jaafar, a state police officer, predicated on the enforcement of state traffic laws. (Compl. ¶ 11). That stop resulted in a search by Officer Ulianelli, a municipal police officer, and the arrest of plaintiff and her co-passenger for drug possession. (*Id.* ¶¶ 13-20). Trooper Jaafar and Officer Ulianelli were on duty and "working a regular patrol shift" at the time of the alleged incident. (*Id.* ¶ 8; ECF No. 25 at 7). Clearly, then, the first two factors of the scope-of-employment test are satisfied as to both officers.

Plaintiff nonetheless contends that the third factor—that is, whether the officers' actions were motivated in part to serve their employers—is not satisfied because they engaged in "intentional misconduct" that cannot be in furtherance of their employers' work. (ECF No. 24 at 6; ECF No. 25 at 7). However, the fact that conduct is intentional does not mean that it cannot be intended, at least in part, to serve the interests of the employer. The complaint does not allege

9

that the actions of Trooper Jaafar and Officer Ulianelli were entirely unrelated to their employer's interests; for example, it does not allege that the actions were taken off-duty and motivated by a desire for personal revenge.  And courts have regularly held that "decisions of law enforcement officers regarding whether, when, how, and whom to investigate" are afforded immunity from tort liability under the MTCA, even when such discretion is "abused."  *Evariste v. City of Boston*, 2020 WL 1332835, at *8 (D. Mass. Mar. 23, 2020).

In short, the allegations of the complaint, even viewed in the light most favorable to plaintiff, demonstrate that Trooper Jaafar and Officer Ulianelli were acting, at least in part, within the scope of their employment at the time of the alleged incident.  *See Gindi*, 216 F. Supp. 3d at 204.  They are therefore insulated from liability for negligence under the MTCA, and Count 1 will be dismissed as to both defendants.

### 2. The IIED Claim

As to the IIED claim, defendants assert that the complaint fails to set forth any allegations that Colonel Mawn engaged in any intentional conduct that caused severe emotional distress to plaintiff.  To prevail on an IIED claim, a plaintiff must prove the following:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . .; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community" . . .; (3) that the actions of the defendant were the cause of the plaintiff's distress . . .; and (4) that the emotional distress sustained by the plaintiff was "severe."

*Miller v. Pugliese*, 693 F. Supp. 3d 163, 183 (D. Mass. 2023) (quoting *Howell v. Enter. Publ'g Co., LLC*, 455 Mass. 641, 672 (2010)).

Here, the complaint is devoid of any factual allegations concerning Colonel Mawn's conduct.  There are no allegations that he interacted with plaintiff or in any way engaged in purposeful behavior that could be characterized as extreme or outrageous.  And aside from a

10

single conclusory statement that "[d]efendants' conduct caused [p]laintiff emotional distress of the nature and severity that no reasonable person could be expected to endure," the complaint lacks any factual allegation concerning the nature and severity of the emotional distress suffered by plaintiff. (Compl. ¶ 69).

In her opposition brief, plaintiff asserts that Colonel Mawn intentionally permitted and encouraged Trooper Jaafar's alleged racial profiling. However, the complaint does not plead any such allegation, nor any plausible facts in support of that allegation. Thus, even viewing the complaint in the light most favorable to plaintiff, it fails to allege an IIED claim against Colonel Mawn. Count 5 will therefore be dismissed as to him.

### 3. The § 1983 Claim

Defendants have also moved to dismiss Count 6 as to Colonel Mawn in his individual capacity, asserting that the complaint fails to state a claim under § 1983. The complaint alleges that Colonel Mawn inadequately trained and supervised Trooper Jaafar in a manner that consciously disregarded plaintiff's constitutional rights.

"It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.'" *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 132 (1st Cir. 2005)). A supervisor may be held liable for the actions of his subordinate "only if (1) the subordinate's behavior results in a constitutional violation, and (2) the supervisor's action was 'affirmatively linked' to the behavior only in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Turner v. Baker*, 2018 WL 1885667, at *2 (D. Mass. Apr. 18, 2018) (citing *Hearty v. Somerset County*, 53 F.3d 1367, 1379-80 (1st Cir. 1995)); *see Ouellette v. Beaupre*, 977 F.3d 127, 140 (1st Cir. 2020) (stating that "a § 1983 claim premised on a theory of

11

supervisory liability must plead an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor" (internal quotations omitted)).

The complaint contains no allegations suggesting that Colonel Mawn provided deficient training to Trooper Jaafar. It does not plead facts indicating that he took any action related to the search and seizure of plaintiff or that his behavior was in any way linked to the alleged violation. At most, the complaint contains conclusory allegations that "Jaafar was inadequately and[/]or negligently trained and[/]or supervised, and the decision of the Commonwealth, MSP, and EOPSS in that regard were deliberate and[/]or conscious." (Compl. ¶ 76). Even then, the complaint does not allege that Colonel Mawn himself provided deficient training amounting to deliberate indifference.

In her opposition brief, plaintiff asserts that Trooper Jaafar's actions were part of a broader pattern of racial profiling. But again, there is nothing in the complaint concerning that claim as it relates to Colonel Mawn. Indeed, the complaint is devoid of any allegation that Colonel Mawn even communicated or interacted with Trooper Jaafar at all, let alone in a manner that would constitute "gross negligence" with respect to plaintiff's constitutional rights.

Accordingly, because "there are no well-pleaded, non-conclusory factual allegations that [Colonel Mawn] was personally involved in, aware of, or deliberately indifferent to, any of the actions of [Trooper Jaafar] complained of in the amended complaint," Count 6 will be dismissed as to Colonel Mawn in his individual capacity. *See Turner*, 2018 WL 1885667, at *2.

### D. Claims against the City of Taunton

#### 1. The Negligence Claims

Defendants next move to dismiss Counts 1, 3, and 4—that is, the claims of negligence, negligent supervision and training, and negligent infliction of emotional distress—as to the City of Taunton on the ground that plaintiff failed to make proper presentment of her claims as

required by the MTCA. According to the statute, "a plaintiff may not institute a civil action against a public employer until (1) he has 'presented his claim in writing to the executive officer of such public employer within two years' of the offending incident, and (2) the executive officer has denied the claim in writing or failed to issue a denial within six months." *Evariste*, 2020 WL 1332835, at *8 (quoting Mass. Gen. Laws ch. 258, § 4). "Th[e MTCA's] strict presentment requirement is a statutory prerequisite for recovery under the [MTCA]." *Shapiro v. City of Worcester*, 464 Mass. 261, 266 (2013) (citing *Vasys v. Metro. Dist. Comm'n*, 387 Mass. 51, 55 (1982)). The presentment requirement ensures that "the responsible public official receives notice of the claim" and that the "official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to insure that similar claims will not be brought in the future." *Gilmore v. Commonwealth*, 417 Mass. 718, 721-22 (1994). Presentment is required regardless of whether an MTCA suit is filed in state or federal court. *See Firmin v. City of Boston*, 2021 WL 352376, at *2-3 (D. Mass. Feb. 2, 2021); *see also Silva v. Town of Uxbridge*, 2025 WL 894864, at *9 (D. Mass. Mar. 24, 2025).

Here, defendants contend that plaintiff did not satisfy her obligation under the MTCA to provide written notice to the City of Taunton before filing this suit. Plaintiff does not contest that assertion in her opposition brief, nor does the complaint otherwise allege presentment. Instead, without citing any supporting authority, plaintiff contends that the MTCA's presentment requirement does not apply to suits brought in federal court. However, the MTCA does not limit the presentment requirement only to suits filed in state court, and indeed, federal courts regularly enforce the presentment provision of the MTCA. *See, e.g.*, *Evariste*, 2020 WL 1332835, at *8. Accordingly, Counts 1, 3, and 4 will be dismissed as to the City of Taunton.

### 2. The IIED Claim

Finally, defendants have moved to dismiss the IIED claim as to the City of Taunton on the ground that the MTCA bars suits for intentional torts. "It is well settled law that pursuant to the Massachusetts Tort Claims Act, a public employer is immune from liability for the intentional torts of its public employees." *Consolo v. George*, 835 F. Supp. 49, 52 (D. Mass. 1993) (citing Mass. Gen. Laws ch. 258, § 10(c)); *see also Chaabouni v. City of Boston*, 133 F. Supp. 2d 93, 99 (D. Mass. 2001) (stating that § 10(c) of the MTCA specifically prohibits suit against a public employer for "any claim arising out of an intentional tort, including . . . intentional mental distress").

Here, the asserted IIED claim is based on the intentional conduct of Officer Ulianelli, a Taunton police officer. Thus, under § 10(c) of the MTCA, the City of Taunton is immune from suit for the alleged intentional emotional harm caused by its public employee. Accordingly, Count 5 will be dismissed as to the City. *See Mellinger v. Town of W. Springfield*, 401 Mass. 188, 196 (1987) (affirming dismissal of an IIED claim against a town pursuant to § 10(c)).

## IV. Conclusion

For the foregoing reasons, the motions to dismiss filed by defendants Trooper Ali Jaafar (ECF No. 16); the City of Taunton and Officer Sarah Ulianelli (ECF No. 12); and the Commonwealth of Massachusetts, the Massachusetts State Police, the Executive Office of Public Safety and Security, and Colonel Jack Mawn (ECF No. 27) are GRANTED. Count 1 is dismissed as to all defendants. Counts 2, 4, 5, and 6 are dismissed as to the Commonwealth of Massachusetts, the Massachusetts State Police, the Executive Office of Public Safety and Security, and Colonel Jack Mawn. Counts 3, 4, and 5 are dismissed as to the City of Taunton.

**So Ordered.**

                                              /s/ F. Dennis Saylor IV
                                              F. Dennis Saylor IV
Dated: May 7, 2025                        Chief Judge, United States District Court